UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEAK PROPERTY AND
CASUALTY INSURANCE
CORPORATION,

        Plaintiff,

v.                           CASE NO.  8:12-CV-2739-T-17TBM

DAVID ENSSLIN, etc.,
et al.,

        Defendants.

_____/

ORDER

This cause is before the Court on:

Dkt. 64   Affidavit - Green
Dkt. 66   Affidavit - Learey
Dkt. 67   Deposition - Landrum
Dkt. 68   Deposition - Learey
Dkt. 69   Affidavit - Ensslin
Dkt. 70   Motion for Summary Judgment - Ensslin
Dkt. 72   Statement of Undisputed Facts - Ensslin
Dkt. 75   Statement of Undisputed Facts - Peak Property and Casualty
Dkt. 76   Motion for Summary Judgment - Peak Property and Casualty
Dkt. 77   Deposition - Ensslin
Dkt. 78   Deposition - Little
Dkt. 79   Exhibit X (Sealed)
Dkt. 80   Exhibit Z (Sealed)
Dkt. 82   Opposition
Dkt. 83   Statement of Disputed Facts - Ensslin
Dkt. 84   Statement of Disputed Facts - Peak Property and Casualty
Dkt. 85   Opposition

In the Second Amended Complaint (Dkt. 27), Plaintiff Peak Property and

Casualty Insurance Corporation ("Peak") seeks a declaratory judgment that the

Case No. 8:12-CV-2739-T-17TBM

insurance policy issued by Plaintiff to Defendant David B. Ensslin does not provide insurance coverage for the September 17, 2012 motor vehicle accident.   Plaintiff Peak alleges that the policy was a "Named Non-Owner Policy" which provides the selected coverage for only the named insured while driving non-owned cars.  Plaintiff Peak relies on the application signed by Defendant Ensslin and the Named Non-Owner Endorsement included in the policy issued to Defendant Ensslin, which replaces the definition of "insured person," so that an "insured person" means "**you** while **you** are using **your insured car**."  The Endorsement amends certain definitions within the policy and amends the insuring language of Part I.  Plaintiff Peak contends that the Policy issued to Defendant Ensslin only covers him, the named insured, and only while he is driving non-owned vehicles; since Defendant Ensslin was not operating the motor vehicle involved in the  accident of September 17, 2012, the Policy does not provide coverage.

Plaintiff Peak attached a copy of the Policy, including the Application, to the Second Amended Complaint.  In the Second Amended Complaint, Plaintiff Peak alleges that, as a result of a clerical error, the Application and Policy Declarations identify the insured as "David Enfflin."

Plaintiff Peak is seeking a declaratory judgment that Peak has no duty to defend and no duty to indemnify as to the actual claims of Richard Foust and Doris Foust and the potential claims of June Carol Jerkins, Martha Criswell, Roman Criswell, the Estate of Dawn Ensslin and the Estate of De.E.  Plaintiff Peak further seeks **a** declaratory judgment that Peak has no duty to defend and no duty to indemnify David B. Ensslin, individually, and as Parent and Natural Guardian of D.E. for any claims by any person or entity arising out of the September 17, 2012 accident.

Case No. 8:12-CV-2739-T-17TBM

The Court notes that a Notice of Voluntary Dismissal has been filed as to Defendant June Carol Jerkins.

Defendant David B. Ensslin has filed a Counterclaim (Dkt. 40) in which Defendant Ensslin seeks a declaratory judgment that the Policy attached to the Counterclaim provides bodily injury liability coverage to D.E. with limits of $100,000 per person and $300,000 per occurrence as to the September 17, 2012 accident, and an award of attorney's fees and costs. In April of 2012, Defendant Ensslin applied for a policy of automobile liability insurance with limits of $100,000 per person and $300,000 per occurrence with Peak Property and Casualty Insurance Corporation, through its authorized agent, Pamela Little and/or Florida Authorized Insurance Agency, Inc. (Dkt. 40, p. 9). Defendant David B. Ensslin disputes that he signed any form of acknowledgment agreeing that the liability policy would cover the named insured only. (Dkt. 40, p. 10). Defendant Ensslin contends that the Named Non-Owner Endorsement is not applicable because he was not provided with a copy of the endorsement at the time he purchased the policy and did not sign an acknowledgment of the endorsement.

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

3

Case No. 8:12-CV-2739-T-17TBM

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted."  Id. at 249-50.

II.  Statement of Facts

For the purposes of the dispositive motions for summary judgment, the following facts are not disputed:

1.  The Amended Complaint in the underlying action, Case No. 53-2013CA-004653-0000-00, Section 11, filed in Polk County Circuit Court, includes the claims of Richard G. Foust and Doris M. Foust against David B. Ensslin, as Parent/Natural Guardian of D.E., a minor, for negligence and loss of consortium, for which the Fousts seek an award of damages, plus costs and interest since the date of the collision, September 17, 2012 (Dkt. 87-1).  The Amended Complaint alleges that, on that date, D.E. negligently operated and/or maintained a motor vehicle so that it collided with a vehicle driven by Doris M. Foust near the intersection of U.S. Highway 17 and County Road 640 in Polk County, Florida.

Case No. 8:12-CV-2739-T-17TBM

2. Defendant Ensslin testified that his daughter, D.E, has lived with him since July, 2010. (Dkt. 75-1, p. 40).

3. Defendant Ensslin testified that Defendant's daughter, D.E., was thirteen years old at the time of Defendant's application for insurance. (Dkt. 75-1, p. 31.)

4. At the time of the accident in the underlying action, September 17, 2012, D.E. was fourteen years old. (Dkt. 70, p. 1).

5. Defendant Ensslin testified that his daughter, D.E., never drove any vehicle while she was in his care, and denied knowledge of whether D.E. had ever driven any other vehicle while she was in someone else's care. (Dkt. 75-1, p. 45).

6. Defendant Ensslin's application for insurance does not include any reference to D.E.

7. There is no evidence which establishes that Defendant Ensslin spoke with Pamela Little about D.E and D.E.'s presence as a member of Defendant Ensslin's household.

8. Defendant David B. Ensslin is self-employed; he operates a lawn maintenance business for individual homes. (Dkt. 75-1, pp. 9-10).

9. Defendant Ensslin testified that he does not own a vehicle, and uses the truck of a friend who resides in his household to operate his lawn maintenance business. (Dkt. 75-1,pp. 8-9).

10. In 2011, Defendant Ensslin owned a truck, but crashed it in a DUI incident. (Dkt. 75-1, pp. 10-11). Defendant Ensslin's driver's license was suspended in

Case No. 8:12-CV-2739-T-17TBM

connection with the DUI.  (Dkt. 75-1, p. 7).

11.  Defendant Ensslin testified that he was able to work after the DUI conviction by working with a friend who also operates a lawn maintenance business; they combined their two companies until April, 2012, when Defendant Ensslin got his driver's license back.  (Dkt. 75-1, p. 11).

13.  Defendant Ensslin testified that he received a letter from the State of Florida advising Defendant of the insurance coverage required to get his license back. Defendant Ensslin made phone calls to get prices on insurance policies that provided the coverage.  (Dkt. 75-1, p. 7).   Florida Authorized Insurance Agency quoted the lowest price for the coverage, around $430.00 for six months.  (Dkt. 75-1, p. 18).

14.  On April 6, 2012, Defendant Ensslin applied for the coverage required, 100/$300,00 liability insurance.  Defendant Ensslin paid the  premium in cash.  (Dkt. 75-1, p. 18).

15.  Defendant Ensslin testified that Pamela Little asked Defendant "a few questions; first my driver's license number, my address, my name.  And she put it all in the computer, printed it out, and said "This is your premium."  I paid her, and that was it."  (Dkt. 75-1, p. 20).  Defendant Ensslin did not read anything at the time he applied for the insurance.  (Dkt. 75-1, p. 41), and signed what Pamela Little handed to him without reading it.  (Dkt. 75-1, p. 42).

16.   At his deposition, Defendant Ensslin testified:

> Q.  Did you expect that your policy would cover your 13-year-old daughter?
>
> A.  Obviously it did not even cross my mind.

6

Case No. 8:12-CV-2739-T-17TBM

> Q.  Well, that's not what I'm asking.  I'm not asking whether you thought about it.  I'm asking, did you go in thinking that this policy would cover your 13-year-old daughter for driving?
>
> [Objection]
>
> A.  I didn't think about it even covering her.  I wasn't worried about whether insurance was going to cover her, with her being 13.
>
> Q.  Who were you worried about it covering?
>
> A.  Me being able to get my license back to drive.
>
> Q.  All right.  That's what you wanted from the insurance, right?  You wanted the insurance to cover you?
>
> A.  Right.

(Dkt. 75-1, pp. 31-32).

17.  Defendant Ensslin testified that he took a paper given to him by Pamela Little to send to the State of Florida for proof of insurance.  (Dkt. 75-1, p. 15).

18.  Defendant Ensslin denied that Pamela Little told him that the insurance policy covered only him.  (Dkt. 75-12, p. 21).

19.  Defendant Ensslin testified that an insurance card was mailed to him about a week after the meeting on April 6, 2012.  (Dkt. 75-1, pp. 25-26).

20.  Defendant Ensslin testified that he assumed that the insurance policy he purchased was mailed to him.   (Dkt. 75-1, p. 28).

Case No. 8:12-CV-2739-T-17TBM

21. Defendant Ensslin testified that he renewed the same policy in April, 2013. (Dkt. 75-1, p. 35).

22. Defendant Ensslin testified that a renewal notice was mailed to him, and he paid the renewal premium of $429.00. (Dkt. 75-1, p. 29).

23. Defendant Ensslin testified that he did not ever read the insurance cards, the insurance policy, the FR-44 form, or any notes of the April 6, 2012 meeting. (Dkt. 75-1, p. 30).

24. Defendant Ensslin testified that, to his understanding, he bought the required coverage, 100/$300,000 liability, and knew that it covered him. (Dkt. 750-1, p. 30).

25. Pamela Little holds a 220 license to sell property and casualty insurance in the State of Florida, and has had that license since 1993. (Dkt. 75-2, p. 19.) Her agency, Florida Authorized Insurance Agency, is licensed by the State of Florida to sell property and casualty insurance at its particular location. (Dkt. 75-2, p. 20).

26. Pamela Little testified that she does not have a specific recollection of selling the subject insurance policy to Defendant Ensslin and does not have a specific memory of saying anything to Defendant Ensslin. (Dkt. 75-2, p. 16).

27. Pamela Little testified that her customary procedure when a telephone inquiry is made is to fill out an application with the information provided, and provide a quote; the applicant then comes to the office, and signs the application. (Dkt. 75-2, p. 17). The applicant pays for the insurance, Ms. Little binds coverage, and the applicant is provided with whatever comes with that policy, such as a copy of the application, the policy jacket, insurance cards. (Dkt. 75-2, p. 18).

8

Case No. 8:12-CV-2739-T-17TBM

28.  Pamela Little testified that she did not deal with anyone at Peak in order to write the subject insurance policy.  (Dkt. 75-2, p. 13).

29.  Pamela Little testified that she has the ability to take in an application and issue a policy on behalf of Peak.  (Dkt. 75-2, p. 15).

30.  Pamela Little testified that she sells insurance for other companies in addition to Sentry companies: MGA, Titan, Victorian, Occidental, Progressive, and others.  (Dkt. 75-2, p. 40).  Ms. Little testified that she does not have to ask permission from each company before binding coverage; she finds the right fit for the customer and then binds coverage with that company.  (Dkt. 75-2, p. 41).

31.  Pamela Little testified that Defendant Ensslin got a copy of his insurance card, his explanation of coverages and his FR-44.  (Dkt. 75-2, p. 18).

32.  Florida Uniform Financial Responsibility Certificate FR-44 (Dkt. 77-2) dated 4/6/2012 provides:

> This certification is effective on the above certification Effective Date and continues until cancelled or terminated in accordance with the financial responsibility laws and regulations of Florida.  The insurance certified is provided by an:
>
> ......
>
> X   OPERATOR'S POLICY - Applicable to any vehicle not registered to the above listed person and subject to the terms and conditions defined in the operator's insurance policy.

33.  The Policy Declarations for Policy 093034732 printed on 4/6/2012 designates the Named Insured as "David B. Enfflin, 3810 Rob Way, Lakeland, FL 33810-1224.  The Policy Declarations further designate the "Named Non-Owner" as

9

Case No. 8:12-CV-2739-T-17TBM

"David B. Enfflin," DOB 6/24/1972.   In a separate box in bold printing, the Policy
Declarations Page provides:

> **"The coverages listed on this Declarations Page apply for only
> the named insured while driving non-owned cars."**

(Dkt. 77-3).

34.  The Policy Declarations Page provides that the following policy forms and
endorsements apply to the coverages as listed in the COVERAGE section:

    BFP2(10/07)
    FL1101(05/11)
    NNO1-FL(09/10)
    PAP1(03/08)
    PIP1-FL(09/10)
    PPA-FL(09/10)

(Dkt. 77-3).   The Florida Office of Insurance Regulation has approved the NNO1-
FL(09/10) form, the Named Non-Owner Endorsement, and the FL1101(05/11) form,
Application for Insurance.

35.  Richard Learey, Peak's corporate representative, testified that Peak did not
file or try to receive approval from the Florida Office of Insurance Regulation for the
Named Non-Owner Acknowledgment form.  (Dkt. 75-3, p. 22).

36.  Richard Learey, Peak's corporate representative, testified that Peak offers
only an insurance policy that includes the Named Non-owner Endorsement to an
applicant who does not own a vehicle.  (Dkt. 75-3, pp. 72-74).  In some states, Peak
offers a broad form policy, a named driver policy covering liability for any vehicle, owned
and non-owned, but not in Florida.  (Dkt. 75-3, pp. 73-74).

10

Case No. 8:12-CV-2739-T-17TBM

37. Richard Learey, Peak's corporate representative, testified that the Named Non-Owner Acknowledgment form is not a policy form, the form is used at the discretion of the agent, and there is nothing in writing mandating when or when not to use it. (Dkt. 75-3, p. 94).

38. The insurance cards for Policy 093034732, effective date 4/6/2012, provide:

INSURED
ENFFLIN, DAVID B

Named Non-Owner Policy

This policy provides coverage for only the named insured while driving non-owned cars.

(Dkt. 77-4).

39. The Application Confirmation for Policy No. 93034732 signed by Defendant Ensslin on 4/6/2012 (Dkt. 76-1, p. 2) provides:

I understand this application when signed becomes a part of the policy.

I hereby apply to the Company for a policy of insurance. All facts reported in this application are true and complete to the best of my knowledge. I understand this policy to be issued in reliance of (sic) these facts being true.

I understand that I must report to the Company all persons age 14 or older who live with me temporarily or permanently, including all children at college, and all persons who are regular operators of any vehicle to be insured.

I understand that this policy does not take effect until I have both signed this application and paid the premium due at inception.......

......

11

Case No. 8:12-CV-2739-T-17TBM

> I HEREBY APPLY TO THE COMPANY FOR A POLICY OF INSURANCE.
> THE ABOVE FACTS ARE TRUE TO THE BEST OF MY KNOWLEDGE. I
> UNDERSTAND THIS POLICY TO BE ISSUED IN RELIANCE OF (sic)
> THESE FACTS BEING TRUE.

Defendant Ensslin signed the Application on 4/6/2012.


40.   The Application of 4/6/2012 provides a certification by Pamela Little:

> I HEREBY CERTIFY THAT I HAVE ASKED THE APPLICANT ALL OF
> THE QUESTIONS LISTED ON THE APPLICATION AND HAVE
> RECORDED THEIR ANSWERS TO THESE QUESTIONS. Agents have
> the authority to bind coverage no earlier than the time and date the
> application is signed by the applicant and the agent and a premium
> deposit accompanies the application.

Pamela Little signed the certification on 4/16/2012.  (Dkt. 76-1, p. 2)


41.  Policy No. 93034732 includes the following provisions:

## DEFINITIONS USED THROUGHOUT THIS POLICY

(2)     **"You"** and **"your"** mean the person shown as the named
insured on the Declarations Page and that person's spouse
if residing in the same household.  **You** and **your** also
means any **relative** of that person if they reside in the same
household, providing they or their spouse do not own a
**motor vehicle**.

(3)     **"Relative"** means a person living in **your** household related
to **you** by blood, marriage or adoption, including a ward or
foster child.  **Relative** includes a minor under **your**
guardianship who lives in **your** household.  Any **relative** who
is age fourteen (14) or older must be listed on the
application or endorsed on the policy prior to a car accident
or loss.

......

(9)     **"Your insured car"** means:

12

Case No. 8:12-CV-2739-T-17TBM

(A)     Any **car you** own that is described on the Declarations **Page**
        and any **car you** replace it with.  A replacement **car** will have
        the same coverage as the car it replaced.  If **you** want
        coverage to apply to a replacement **car, you** must notify **us**
        within fourteen (14) days of its acquisition.  **You** must pay
        any additional premium charges for coverage for the
        replacement **car**.

(B)     Any additional **car** of which you acquire ownership during
        the policy period, provided **we** insure all other **cars you** own
        on the date **you** acquire the additional **car**.......

(C)     Except for collision or comprehensive coverage under Part
        IV - Car Damage Coverage of this policy, any **car** not owned
        by **you** while being used temporarily with the permission of
        the owner as a temporary substitute for any other vehicle
        described in the Declarations Page because of its
        withdrawal from normal use due to breakdown, repair,
        servicing, loss or destruction.

(D)     Any **utility trailer you** own, or any **utility trailer** not owned
        by **you** while being used with permission of the owner,
        except for collision or comprehensive under Part IV - Car
        Damage Coverage of this policy.

......

## Part I - LIABILITY COVERAGE

This coverage applies only if a premium is shown for this coverage on the Declarations
Page.

**We** will pay damages for which any **insured person** is legally liable because of **bodily
injury** and/or **property damage** caused by a **car accident** arising out of the ownership,
maintenance or use of a **car** or **utility trailer**.   **We** will settle any claim or defend any
lawsuit which is payable under the policy, as **we** deem appropriate.

......

## Additional Definitions Used in This Part Only

As used in this Part,

13

Case No. 8:12-CV-2739-T-17TBM

    (1)    **"insured person"** or **"insured persons"** means:

        (A) **You,**

        (B) Any person using **your insured car.**

        (C) Any person or organization with respect only to legal liability for acts or omissions of:

            (1)   Any person covered under this Part while using **your insured car;** or

            (2)   **You** under this Part while using any **car** or **utility trailer** other than **your insured car** if the **car** or **utility trailer** is not owned or hired by that person or organization.......

(Dkt. 76-3. pp. 2,3).

Form NNO1-FL(9/10), the Named Non-Owner Endorsement - Florida, provides:

The provisions and exclusions that apply to the Personal Auto Policy and the Amendatory Endorsement also apply to this endorsement, except as changed by this endorsement.


## Definitions Used Throughout This Policy

The following definitions are amended in or added to **your** policy:

    (2)    **"You"** and **"your"** means only the person shown as the named insured on the Declarations Page.

    (9)    **"Your insured car"** means:

        (A)    A **non-owned car** which **you** are using with the permission of the owner;

        (B)    Any **car** of which **you** acquire ownership during the policy period.  For coverage to apply under Part I - Liability coverage, **you** must, however, notify **us** within fourteen (14) days of its

Case No. 8:12-CV-2739-T-17TBM

> acquisition.  Car Damage coverage will apply to the newly acquired **car** only if **you** ask **us** to provide such coverage and **we** agree to do so. **You** must pay any additional coverage for the newly acquired **car**.

(17)   **"Non-owned car"** means:

    (A)   A **car** not owned or leased by **you**;

    (B)   A **car** not owned or leased by members of the household in which **you** reside; or

    (C)   A **car** not available for **your** regular use.

## PART I - LIABILITY

This section of **your** policy is amended as follows:

**We** will pay damages for which **you** are legally liable because of **bodily injury** and/or **property damage** caused by a **car accident** arising out of the use of **your insured car**.  **We** will settle any claim or defend any lawsuit which is payable under the policy.

.......

**Additional Definitions Used in This Part Only** is replaced in its entirety by the following:

As used in this Part, **"insured person"** means **you** while **you** are using **your insured car**.

41.  The Producer Agreement (Dkt. 79 (Sealed)) of 4/20/2007 between Peak Property and Casualty and Florida Authorized Insurance Agency states:

**1.  Authority: The Company hereby grants authority to the Producer for policies of insurance in the territories, lines of business, and classifications, in accordance with the underwriting rules, limitations and premium rates, established by Company and provided to Producer in writing or electronic format.**

Case No. 8:12-CV-2739-T-17TBM

Company authorizes Producer to:

(a)     Solicit, accept and forward to Company applications for
        insurance and endorsements, and to bind coverage in
        accordance with the underwriting rules and limitations
        prescribed by Company, as may be amended from time
        to time......

42.  The Florida Auto Guide (Dkt. 80(Sealed)) provides:

**Underwriting Rules**

.......

**Driver Exclusions**

.......

All household members who do not drive a motor vehicle
should be listed as a non driver on the policy.

......

**Final Underwriting Authority**

We reserve the right to make final underwriting decision on
all applications.  A combination of factors may cause an
application to be unacceptable even though not specified in
this rule guide's Underwriting Rules.  All requests for
exceptions must be made through your product
management team.

**Material Misrepresentation of Risk**

Florida Statute 627.409 recognized the insured's
responsibility and obligation to truthfully and fully complete
an application for insurance.  Material misrepresentation on
the application may affect the insured's eligibility to receive
the benefits of the insurance contract.  We will cancel the
policy should misrepresentation be discovered.

Case No. 8:12-CV-2739-T-17TBM

> **Information that is most often misrepresented includes:**
>
> Drivers - obtain names and information on all persons age
> 14 or older residing in the household (licensed or not) and
> others operating the vehicle.
>
> .......
>
> **Endorsements**
>
> ......
>
> Endorsements requesting the deletion of a driver or lowering
> the limits of liability must be signed by all named insured's.

43. In response to the request of Gary Landrum, Pamela Little faxed a copy of the application of Defendant Ensslin on 11/14/2012. (Dkt. 67-5)  The fax includes a copy of Defendant Ensslin's signed application (2 pages)(Form 1101(5/11)), the signed rejection of UM coverage (1 page)(Form 1201(9/10)) and the Named Non-Owner Acknowledgment (1 page)(Form GN1008(2/11)).   The pages are out of order; the first page of Defendant's application is page 3, and the second page is page 6.

## III. Discussion

The Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332(a).  A federal court sitting in diversity applies the choice-of-law rules of the forum state. Rando v. Government Employees Ins. Co., 56 F.3d 1173, 1176 (11th Cir. 2009).  Florida follows the lex loci contractus rule, which provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage.  id. at 1176.  The parties do not dispute that Florida law applies.  The Court will apply Florida law in determining insurance coverage under the subject Policy.

Case No. 8:12-CV-2739-T-17TBM

A. General Principles

The construction of an insurance policy is a question of law for the court. <u>Jones v. Utica Mutual Ins. Co.</u>, 463 So.2d 1153, 1157 (Fla. 1985); <u>Roberts v. Florida Lawyer's Mutual Ins. Co.</u>, 839 So.2d 843, 845 (Fla. 4th DCA 2003). Insurance contracts are construed according to their plain meaning. <u>Garcia v. Fed. Ins. Co.</u>, 969 So.2d 288, 291 (Fla. 2007). If the policy language is not ambiguous, courts apply the plain language of the policy. <u>HC Waterford Props., Inc. v. Mt. Hawley Ins. Co.</u>, 2009 WL 2600431, *3 (S.D. Fla. 8/21/2009). A policy is ambiguous when the language is subject to "more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage...." <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So.2d 29, 34 (Fla. 2000). Any ambiguities in an insurance policy are to be interpreted liberally and in favor of the insured and strictly against the insurer. <u>See</u> <u>Flores v. Allstate Ins. Co.</u>, 819 So.2d 740, 744 (Fla. 2002); <u>Anderson</u>, 756 So.2d at 34; <u>McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n</u>, 758 So.2d 692, 694-95 (Fla. 4th DCA 1999). [E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy. <u>See</u> <u>Excelsior Ins. Co. v. Pomona Park Bar & Package Store</u>, 369 So.2d 938, 942 (Fla.1979). However, "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite. It does not allow courts to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." <u>Id.</u> Simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous. <u>See</u> <u>Eagle American Ins. Co. v. Nichols</u>, 814 So.2d 1083, 1085 (Fla. 4th DCA 2002). When construing insurance policies, courts are to read the policy as a whole and attempt to give every provision its full meaning and operative effect. <u>See</u> <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So.2d 29, 34 (Fla. 2000); <u>see also</u> Sec. 627.419(1), <u>Fla. Stat.</u> (2002). In other words, a single policy provision should not be read in isolation and out of context, for the contract is to

Case No. 8:12-CV-2739-T-17TBM

be construed according to its entire terms, as set forth in the policy and amplified by the policy application, endorsements, or riders.  See Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 166 (Fla. 2003)(citing Sec. 627.419(1), Florida Statutes (2002)).

Under Florida law, an insured bears the burden of proving that a claim against the insured is covered by the insurance policy.  LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir.1997) (internal citations omitted).  The burden of proving an exclusion to coverage is, however, on the insurer.  Id.

B.  Named Non-Owner Policy

Plaintiff Peak argues that the plain language of the Application, Policy Declarations and Named Non-Owner Endorsement establish that the subject Policy is a Named Non-Owner Policy which should be enforced as written, providing coverage only for the named insured, David B. Ensslin, while driving non-owned cars.

Defendant Ensslin argues that the Named Non-Owner Endorsement is ambiguous, that an insured is left to guess whether the definition of "You" and "your" was amended in or added to the Policy, and the ambiguity should be construed against Plaintiff Peak.

The Court must construe the Policy as a whole, and attempt to give every provision its full meaning and operative effect, including any endorsements.  The Court finds that the Named Non-Owner Endorsement is not ambiguous because it states "the following definitions are amended in or added to your policy...."  Definitions (2) and (9) are present in the "Definitions Used Throughout This Policy" Section of the Policy. Those Definitions are amended by the Definitions in the Endorsement.  There is no Definition (17) in the Policy; that Definition is added to the Policy by the Endorsement.

19

Case No. 8:12-CV-2739-T-17TBM

The application states on its face that the subject Policy is a Named Non-Owner Policy.  The Policy Declaration sheet states that coverages listed apply for only the named insured when driving non-owned cars. The FR-44 provided to Defendant Ensslin states on its face that Peak has issued an operator's policy which applies to any vehicle not registered/titled to the listed person, "David B. Enfflin," and subject to the terms and conditions defined in the operator's insurance policy.  The insurance cards issued to Defendant Ensslin state on their face that the subject Policy is a Named Non-Owner Policy which provides coverage for only the named insured while driving non-owned cars.  Defendant Ensslin has testified that he never read any of the above documents. Defendant Ensslin does not contend that he signed documents that he was prevented from reading by Plaintiff Peak or Peak's agent, or which Peak or Peak's agent induced him not to read.  After Defendant's application and premium were transmitted to Plaintiff Peak, Peak subsequently issued the subject Policy and mailed it to Defendant Ensslin; Defendant Ensslin has renewed the same policy.   Defendant Ensslin's decision not to read the policy does not alter its terms.

Defendant Ensslin does not argue that the application for insurance was ambiguous or that he did not sign it.  The application for insurance states:

> "I understand that I must report to the Company all persons age 14 or older who live with me temporarily or permanently, including all children at college, and all persons who are regular operators of any vehicle to be insured."

The Court is not aware of any evidence that establishes that Defendant Ensslin complied with the above requirement.

C.  Named Non-Owner Acknowledgment

Defendant Ensslin argues that there is a significant disputed issue of fact as to

Case No. 8:12-CV-2739-T-17TBM

whether the Named Non-Owner Acknowledgment was required to issue the Named
Non-Owner Endorsement.  Defendant Ensslin relies on the testimony of Pamela Little,
the agent who bound coverage on behalf of Plaintiff Peak, who testified at her
deposition as follows:

> Q.  Okay.  In order for you to have this policy with this endorsement, you
> needed Mr. Ensslin to sign the acknowledgment, which is the second
> page of Exhibit A, correct?
>
> A.  Correct.
>
> Q.  Which is why you purport to have him sign the acknowledgment on
> April 6 –
>
> A.  Correct
>
> Q. – 2012, correct?
>
> A.  I would think so, yeah.
>
> Q.  So this acknowledgment is the – is the document that breaths life into
> this endorsement, which is the last page of Exhibit A.
>
> [Objection]
>
> A.  I assume so.  I'm not – I assume so, yeah.

(Dkt. 75-2, pp. 36-37).

Defendant Ensslin argues that Plaintiff Peak's policies require that the applicant
sign the Named Non-Owner Acknowledgment.  Defendant Ensslin relies on the
provision for Driver Exclusions in the Underwriting Rules of Florida Auto Guide and the
requirements of the Endorsement section:

> You cannot exclude:
>
> > The named insured or spouse

21

Case No. 8:12-CV-2739-T-17TBM

>Drivers on policies which carry PIP/PD coverage only
>Drivers when there is an SR22 or FR44 filing on the policy

You can exclude:

>Other drivers in the household

Attach a signed and completed driver exclusion form, including the date of birth and relationship to the insured, with an explanation for the exclusion, to the application.

To delete exclusion, we require a request signed by the named insured to add the excluded driver to the policy and all appropriate driver information.

All household members who do not drive a motor vehicle should be listed as a non driver on the policy.

(Dkt. 80, p. 4).  Peak has obtained approval from the Florida Office of Insurance Regulation for a Named Driver Exclusion Endorsement (Dkt. 67-7, pp. 26-27, NDE1a-FL(12/09), NDE1-FL(12/09)), but that endorsement is not involved in this case.   An exclusionary endorsement might read as follows:

>"It is hereby agreed and understood that no coverage shall apply for this policy for occurrences which take place while any vehicle is operated by [person excluded]."

See, e.g., Bankers & Shippers Ins. Co. of New York v. Phoenix Assur. Co. of New York, 210 So.2d 715 (Fla. 1968).   At the time of Defendant Ensslin's application, D.E. was not an "excluded driver," but a "non-driver," i.e. a "person who resides in the household but is physically unable to drive, or has never been licensed and never drives." (Dkt. 80, p. 7).   Therefore, a signed driver exclusion form was not required.   Richard Learey, corporate representative for Peak, testified that the Named Non-Owner Acknowledgment is not a policy form, is not a form approved by the Florida Office of Insurance Regulation, and the use of the form is discretionary with the agent.   Richard Learey further testified that the Named Non-Owner Policy was the only policy Peak could have offered to Defendant Ensslin, given that Defendant Ensslin did not own a

22

Case No. 8:12-CV-2739-T-17TBM

motor vehicle.

The Court finds Defendant Ensslin's reliance on the Driver Exclusion and Endorsement provisions of the Florida Auto Guide to be misplaced. This coverage dispute does not involve the deletion of a driver or the lowering of liability limits. The underwriting procedures of Plaintiff Peak do not require a signed Named Non-Owner Acknowledgment for the Named Non-Owner Endorsement to take effect.

C. Scope of Pamela Little's Authority

Defendant Ensslin argues that Pamela Little was Plaintiff Peak's agent for all purposes regarding the sale of the subject insurance policy to Defendant Ensslin. Defendant Ensslin argues that it is undisputed that Pamela Little was exclusively in control of Defendant Ensslin's insurance application, and provided the Named Non-Owner Acknowledgment, on which Defendant Ensslin contends his forged signature was placed, to Plaintiff Peak. Defendant Ensslin contends that Pamela Little's testimony that she needed Defendant Ensslin's signature on the Named Non-Owner Acknowledgment is binding on Peak, since Pamela Little acted as Peak's agent.

Plaintiff Peak disputes that Pamela Little was Peak's agent for all purposes as to the sale of the subject insurance policy to Defendant Ensslin. Plaintiff Peak argues that Pamela Little did not testify that Plaintiff Peak required Defendant Ensslin to sign the Named Non-Owner Acknowledgment, but only agreed with the question that she needed Defendant Ensslin to sign the Named Non-Owner Acknowledgment. Richard Learey, Plaintiff Peak's corporate representative, testified that the use of the Named Non-Owner Acknowledgment is left to the agent's discretion. When questioned about whether the Named Non-Owner Acknowledgment "breathes life" into the Named Non-Owner Endorsement, Pamela Little testified "I assume so, yeah." (Dkt. 75-2, pp. 36-37). The Court understands "breathes life" to mean that, without the Named Non-

23

Case No. 8:12-CV-2739-T-17TBM

Owner Acknowledgment, the Named Non-Owner Endorsement is not effective.
Plaintiff Peak argues that its Underwriting Rules do not require the execution of the
Named Non-Owner Acknowledgment. The Court has determined that a Named Driver
Exclusion Endorsement is different from the Named Non-Owner Acknowledgment form,
and is not involved in this case.

Whether a person acts as a broker or an agent is not determined by what he is
called, but is to be determined from what he does. RLI Insurance Co. v. Collado, 678
So.2d 1313, 1315-1316 (Fla. 2d DCA 1996), rev. granted, 691 So.2d 1079 (Fla. 1997).
The distinction between an insurance agent and an insurance broker is important,
because the acts of an agent are imputable to the insurer, and the acts of a broker are
imputable to the insured. Essex Insurance Co. v. Zota, 985 So.2d 1036, 1046 (Fla.
2008).

Pamela Little testified that she is an independent insurance agent; she selects
the company which provides the best fit for her customer among the companies for
which she is authorized to bind coverage. Pamela Little further testified that she is not
an employee of Peak Property and Casualty, but is an agent for the Company, able to
take in an application and issue a policy. (Dkt. 75-2, p. 15). An independent insurance
agent can be the agent of either the insurer or the applicant. In Steele v. Jackson
National Life Insurance Company, 691 So.2d 525, 527 (Fla. 5th DCA 1997), the Court
states:

> The general rule is that an independent agent or broker acts
> on behalf of the insured rather than the insurer. In the
> absence of special circumstances, the broker will be
> considered the agent of the insureds as to matters
> connected with the application and the procurement of the
> insurance, despite the fact that the broker receives his or her
> compensation from the insurer. However, an independent
> insurance agent can be the agent of the insurance company

24

Case No. 8:12-CV-2739-T-17TBM

for one purpose and the agent of the insured for another.

(Citations omitted). For example, when the insurance company is one of an agent's licensed companies, an independent insurance agent is an agent of the insurance company rather than the insured, for the purpose of rejection of uninsured motorist coverage. <u>Travelers Insurance Company v. Quirk</u>, 583 So.2d 1026 (Fla. 1991). Given the possibility of dual agency, a determination that a particular agent is an insurance broker may not conclude the issue of agency relationship. <u>Almerico v. RLI Ins. Co.</u>, 716 So.2d 774, 777 (Fla. 1998).

The Court notes that Pamela Little is in a contractual relationship with Plaintiff Peak. Pursuant to the Producer Agreement, Pamela Little was the authorized agent of Plaintiff Peak for the purpose of soliciting, accepting and forwarding the application of Defendant Ensslin for the subject Insurance Policy, and binding coverage in accordance with Peak's underwriting rules and limitations on April 6, 2012. (Dkt. 79, p. 1). "Binding coverage" is not the same as "issuing a policy." A binder is a contract providing for interim insurance effective at the date of application for insurance, and terminating at either completion or rejection of the principal policy, issued to provide temporary coverage while the application for permanent insurance is pending. <u>Frank v. Travelers Indem. Co. of Hartford, Conn.</u>, 310 So.2d 418, 419-420 (Fla. 3d DCA 1975). Plaintiff Peak retained final underwriting authority as to the policy, pursuant to the Producer Agreement. Pamela Little's testimony that she was authorized to issue a policy does not expand her authority beyond that outlined in the Producer Agreement. The Court understands Pamela Little's testimony that she was authorized to take in an application and issue a policy to be merely a shorthand expression of Pamela Little's authority to bind coverage. The certification on Defendant Ensslin's application expresses Pamela Little's authority to bind coverage rather than issue a policy.

25

Case No. 8:12-CV-2739-T-17TBM

Plaintiff Peak does not dispute that Pamela Little acted in her capacity as an agent of Plaintiff Peak when she forwarded Defendant Ensslin's application and supporting documents to Peak.  The fact that Pamela Little sent the Named Non-Owner Acknowledgment to Peak  does not make the Named Non-Owner Acknowledgment a part of Defendant Ensslin's 2-page application, or establish that  Plaintiff Peak required the execution of the Named Non-Owner Acknowledgment.  Pamela Little's actual authority as outlined in the Producer Agreement does not extend to establishing underwriting rules; Pamela Little was authorized to solicit, accept and forward applications for insurance and endorsements, and to bind coverage in accordance with Peak's underwriting rules and limitations.  Pamela Little's testimony that she needed Defendant Ensslin to sign the Named Non-Owner Acknowledgment establishes only that Pamela Little, in her capacity as agent for Peak, believed the Named Non-Owner Acknowledgment was necessary in the subject transaction; it does not create an underwriting rule that the Plaintiff Peak required the execution of the Named Non-Owner Acknowledgment.

Defendant Ensslin's application was an offer to contract for insurance; Plaintiff Peak's acceptance of the application created a legally enforceable contract.  Pursuant to Defendant Ensslin's application and supporting documents, Plaintiff Peak issued an operator's policy, which is explicitly authorized by the Florida's Financial Responsibility law.  See Florida Statutes 324.151(b), 324.022, 324.023.  It is undisputed that Defendant Ensslin required an FR-44 policy, that Defendant Ensslin did not own a vehicle at the time of his application, that Defendant Ensslin signed the application for the insurance policy and paid the premium, that Pamela Little took in Defendant Ensslin's application and bound coverage, and that Peak subsequently issued the insurance policy for which Defendant Ensslin had applied, which included the Named Non-Owner Endorsement, and which was mailed to Defendant Ensslin.   Once a policy is issued by the insurance company, the binder issued by the authorized agent is no longer effective.  Pursuant to Florida Statute 627.419 (1), Defendant's application for

26

Case No. 8:12-CV-2739-T-17TBM

insurance became part of the policy, but the Named Non-Owner Acknowledgment is not part of the policy or application.  As a matter of law, the insurer is entitled to rely on the representations made by an applicant in the application for insurance.  New York Life Ins. Co. v. Nespereira, 366 So.2d 859 (Fla. 3d DCA 1979).

The issue of agency is ordinarily a question of fact to be determined by the jury. See Orlando Executive Park , Inc. v. Robbins, 433 So.2d 491, 494 (Fla. 1983).  The determination of an agency relationship can be resolved by summary judgment only when the evidence is capable of just one interpretation.  Folwell v. Bernard, 477 So.2d 1060 (Fla. 2d DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986).  The Court does not view the dispute as to the status of Pamela Little to be a material factual dispute.  It is not disputed that Pamela Little acted in her capacity as an agent of Plaintiff Peak for those purposes indicated in the Producer Agreement.  The Producer Agreement is clear and unambiguous.   A clear and unambiguous contract  is the best evidence of the intent of the parties, and its meaning and legal effect are questions of law for determination by the Court.   Jaar v. University of Miami, 474 So.2d 239, 242 (Fla. 3d DCA 1985).  Plaintiff Peak does not require the execution of the Named Non-Owner Acknowledgment under its Underwriting Rules, and Pamela Little's belief that it was required does not change Peak's  Underwriting Rules.  The Named Non-Owner Acknowledgment is not part of the application which Defendant Ensslin admits he signed, and is not listed on the Policy Declaration Sheet as a form which applies to the coverages listed in the Coverage Section of the Policy.  If the Court assumes, for the purpose of ruling on the pending motions for summary judgment,  that Defendant Ensslin's signature was forged by Pamela Little on the Named Non-Owner Acknowledgment, that does not have any impact on whether the Named Non-Owner Endorsement was effective.  Defendant Ensslin applied for coverage as a Named Non-Owner, and that is the type of policy that Plaintiff Peak issued.  The Named Non-Owner Endorsement is a part of the subject Policy, and limits coverage to the Named Insured while driving non-owned cars.

27

Case No. 8:12-CV-2739-T-17TBM

The Court construes the Policy according to its plain meaning in finding that the Policy provides coverage only to the named insured, David B. Ensslin, while driving non-owned cars.   After consideration, the Court grants the Motion for Summary Judgment of Plaintiff Peak (Dkt. 76), and denies the Motion for Summary Judgment of Defendant Ensslin, individually and as Personal Representative of the Estate of Dawn Ensslin, and as Parent and Natural Guardian of D.E.(Dkt. 70).  The Court finds that Plaintiff Peak has no duty to defend and no duty to indemnify under Policy No. 093003472 for any claims or suits by any person or entity arising out of the September 17, 2012 motor vehicle accident.   Accordingly, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. 76) is **granted**. Plaintiff Peak Property and Casualty Insurance Corporation has no duty to defend and no duty to indemnify under Policy No. 093003472 for any claims or suits by any person or entity arising out of the September 17, 2012 motor vehicle accident.  The Clerk of Court shall enter a final judgment in favor of Plaintiff Peak Property and Casualty Insurance Corporation and against Defendant David Ensslin, individually, and as Parent and Natural Guardian of D.E., a minor.  Defendant Ensslin's Motion for Summary Judgment (Dkt. 70) is **denied**.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 21st day of May, 2014.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record